IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. GEORGE H. ASKEW,
2. ROMELL E. BULLOCK,
3. **GREGORY A. COLLINS,**
4. **GEORGE A. GADDY,**
5. DELBERT J. GARDNER,
6. RICHARD W. JOHNSON,
7. SHEPS H. KHAMSAHU,
8. **ERIC LUGO,**
9. LAWRENCE T. MARTIN,
10. JOHNIE A. MYERS,
11. DARRELL R. PARKER,
12. CALVIN R. RILEY,
13. **COREY L. RILEY,**
14. **THOMAS A. SCHRAH, JR.,**
15. JAMES R. SWITZER, and
16. CLIFFORD M. WRIGHT,

        Defendants.

## GOVERNMENT'S INTRODUCTION TO *JAMES* PROFFER (#317)

The United States of America, by United States Attorney John F. Walsh, through the undersigned Assistant United States Attorney (Government), hereby respectfully provides this Government's Introduction to the *James* proffer contemplated by the Courtroom Minutes dated March 15, 2012 (#317) and guidance in the related colloquy with the Court on May 21, 2012. The schedule of proposed FRE 801(d)(2)(E) statements, with objections provided by the defense as of today's date, is filed herewith as Attachment One.

1

The Government states and represents to the Court as follows:

1. A statement made by a co-conspirator is not hearsay if made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171 (1987). Under this rule the out-of-court declaration of a co-conspirator may be admitted even where the indictment fails to include a conspiracy count. In the present case, three conspiracies are discernible for purposes of an 801(d)(2)(E) analysis:

**A. HLMC Clubhouse Conspiracy**: Between January 1, 2004 and on or about January 20, 2012, Hell's Lovers Motorcycle Club (HLMC) members and associates agreed that one and more than one of them would maintain and use the HLMC Colorado chapter Clubhouse as drug involved premises in violation of Title 21 U.S.C. §§ 846 and 856(a)(1) and (2);

**B. HLMC 18 U.S.C. § 924(o) Firearms Conspiracy**: Between January 1, 2004 and January 20, 2012, HLMC members and associates agreed that one and more than one of them would: (1) use and carry a firearm during and in relation to the maintenance and use of a drug involved premises; and (2) possess a firearm in furtherance of - (a) the use and maintenance of a drug involved premises, and (b) distribution and possession with intent to distribute a controlled substance and conspiracy to do so.

**C. HLMC 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(B)(C) and (D) Drug Trafficking Conspiracy.** Between January 1, 2004 and January 20, 2012, Corey Riley, who was at various times President of the Colorado Chapter of the HLMC and Western Regional President of the HLMC, Thomas Schrah, Gregory Collins, George Gaddy, Eric

2

Lugo, HLMC members, associates, and other persons known and unknown to law enforcement agreed that one and more than one of them would distribute and possess with intent to distribute a controlled substance, to wit: a quantity of a mixture and substance containing a detectable amount of cocaine and a substance and mixture containing a detectable amount of marijuana.

**D.  HLMC 18 U.S.C. §§ 371 and 922(g) and (n) Prohibited Person With a Firearm Conspiracy.** Between January 1, 2004 and January 20, 2012, HLMC members and associates agreed that one and more than one of them would exercise possession and control over firearms which had moved in interstate commerce after said HLMC member or associate(s) had been convicted of a crime punishable by a term of imprisonment greater than one year or while said HLMC member or associate was a user of a Schedule I or Schedule II controlled substance.

**E.  HLMC 18 U.S.C. §§ 4 and 371 Misprision Conspiracy.** Between January 1, 2004 and January 20, 2012, HLMC members and associates agreed that one and more than one of them would take action to conceal from the responsible authorities the commission of a felony offense defined by the laws of the United States.

2.      The *James* submission does not contain a complete or total recounting of all the government's evidence, but rather is intended to satisfy the limited purpose of assisting the Court to make preliminary findings as to the initial two prongs of admissibility of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E), i.e., whether one or more conspiracies existed, and whether the speaker was a member of one or more of the

conspiracies. The government reserves the right to present evidence as to the conspiracy and co-conspirator statements at trial.

3. Evidence at trial will show the existence between 1966 and 2012 of an enterprise known as the Hell's Lovers Motorcycle Club (HLMC). HLMC is a national "outlaw" motorcycle club with chapters in several states. The organizational structure of HLMC is meant to be confidential. Members are discouraged from disclosing the culture, means, and methods of HLMC to outsiders. In fact, the structure of HLMC may be thought of as a pyramid, with an elite group of senior HLMC members exercising control as the national board of directors. Some members of the board of directors are known to be members of a select subgroup known as "Corrupt Crew". Some Corrupt Crew members include a Corrupt Crew patch on the HLMC vest ("colors") they wear. The national board of directors appoints national officers, who in turn appoint local chapter officers, and thereby exercise authority over HLMC members and activities in through the orgaization by regions and chapters.

4. HLMC membership entails duties and responsibilities to HLMC. HLMC members pay local and national dues and are subject to direction by officers and more senior HLMC members. HLMC leaders and members take precautions to ensure no legitimate member of law enforcement infiltrates the HLMC. Many HLMC members have a felony conviction – a felony conviction generally shows a person is not law enforcement. If a prospective member does not have an established felony conviction, as a practice HLMC leadership will present the candidate with moral or criminal challenges a legitimate member of law enforcement can not fulfill. The path to full membership for the "prospect" is time-consuming and trying. It can take a candidate several years to progress from

being a "hang around" to being a "christened brother" authorized to wear full HLMC "colors" and take the HLMC membership tattoo. Within the hierarchy of the HLMC, the date of a christened member's HLMC tattoo establishes his general place of seniority in the organization. After fifteen years of full membership, a HLMC member is eligible to be given a "Lifer" patch. After fifteen years a member and be considered a "retired" member – which means the retired member may enjoy the privileges of membership without paying monthly dues.

5. HLMC members derive advantages and privileges from membership. Within the "outlaw" echelon of society, being a member of an established group provides one with some cover as against predators and competitors from rival groups. HLMC culture provides for the resolution of internal and external disputes without the aid of legitimate law enforcement and by any means necessary, ranging from mutual unarmed combat or "beat downs" to the use of firearms and deadly force. A HLMC "christened brother" is expected to support and defend the HLMC collectively and other christened brothers individually. In return, each christened brother can expect the support of the HLMC membership in meeting challenges from rivals or predators. Accordingly, the culture of HLMC calls for members to possess and to use firearms upon occasion in furtherance the goals and activities of HLMC collectively and individually.

6. Between 2005 and 2012, with the exception of a period of approximately five months, the Colorado chapter of HLMC maintained a HLMC Clubhouse in the Denver metropolitan area. Financially supporting the HLMC Clubhouse was a goal of the HLMC. Among other things, the HLMC Clubhouse served as a location where HLMC members operated an unlicensed after hours club permitting members and associates to congregate,

drink, gamble, socialize, possess firearms and ammunition, and use and share marijuana and cocaine on a recurring basis. Marijuana was used openly and routinely at the HLMC Clubhouse during HLMC activities on the average Thursday, Friday and Saturday. The use of cocaine at the HLMC Clubhouse was less conspicuous – efforts were made to prevent outsiders or "civilians" from observing HLMC members using cocaine. Marijuana is a Schedule I controlled substance. Cocaine is a Schedule II controlled substance.

7. The economics of controlled substance abuse tend to result in users re-distributing a portion of controlled substances acquired in order to generate funds to replenish the supply of controlled substance. A substantial number of HLMC members were involved in marijuana or cocaine use and distribution. The Colorado chapter of the HLMC represented a de facto consensus conspiracy to use and distribute marijuana and cocaine. The HLMC membership agreed and acted together to maintain and to use the HLMC Clubhouse as a drug involved premises in violation of Title 21 U.S.C. §§ 846 and 856(a)(1) and (2).

8. HLMC Western Regional President Corey Riley, a national and a local HLMC leader and organizer, used his position in the HLMC to further his personal illegal drug trafficking activity in the District of Colorado and elsewhere between 2004 and January 20, 2012. From 2004 though 2007, Corey Riley trafficked in kilogram quantities of cocaine. In 2005, Corey Riley met with an out of state HLMC member and two other men at the Colorado chapter HLMC Clubhouse for the purpose of trafficking in kilogram quantities of cocaine. Thereafter, a number of kilogram sized cocaine transactions went through. In July 2007, a courier was apprehended in Nebraska and a kilogram of cocaine was seized. That drug courier cooperated with investigators in Nebraska. The drug courier eventually

explained how he met the men later identified as Corey Riley and Calvin Riley in Denver in 2005 at the HLMC Clubhouse.  At that time, Calvin Riley was President of the HLMC Colorado Chapter and Corey Riley was the Western Regional President of the HLMC.

9.      In April 2010, investigators began to make controlled buys of cocaine from defendant Corey Riley using cooperating human sources of information (CHS).  Using several different CHS, investigators made approximately 11 controlled buys of cocaine from Corey Riley between April 2010 and July 2011.   On July 14, 2011, investigators executed a federal search warrant at 2331 Pontiac Street, Denver, CO.  Investigators recovered more than six pounds of marijuana, more than 300 grams of a mixture and substance containing a detectable about of cocaine, approximately 10 firearms, ammunition, scales, U.S. currency, cutting agents, drug paraphernalia and packaging material suitable for use in marketing controlled substances.

10.     On or about January 20, 2012, ATF Special Agents executed search warrants and arrest warrants in the case.  The HLMC Clubhouse was searched.  Three firearms and ammunition were recovered at the Clubhouse.

11.     **Proving The Existence of a Conspiracy**. Rule 104 provides for the use of a preponderance of the evidence standard to determine whether the prerequisites for admission have been established. *United States v. Townley*, 472 F.3d 1267 (10th Cir. 2007). The district court's determination of admissibility will not be reversed on appeal unless it is clearly erroneous.  *United States v. Whitehead*, 238 F.3d 949 (8th Cir. 2001). Admission under Rule 801(d)(2)(E), is proper where "substantial evidence," including the hearsay statements themselves, supports a finding that a combination or conspiracy

existed. *See United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986); *United States v. Andrews*, 585 F.2d 961, 964 (10th Cir. 1978). "Substantial evidence" does not necessarily mean direct evidence. The combination or common plan may be inferred from circumstantial evidence. *Bucaro*, at 1232; *Andrews*, at 964. In *United States v. Petersen*, 611 F.2d at 1330 n.1, the Tenth Circuit described the required evidentiary showing as "more than a scintilla." The court stated, (emphasis added):

> It is such evidence as a reasonable mind would accept as adequate to support a conclusion. <u>Substantial evidence is less than the weight of the evidence</u>. The possibility of drawing two inconsistent conclusions from the evidence . . . does not prevent the existence of the requisite elements from being supported by substantial evidence.

*Petersen*, 611 F.2d at 1330 n.1. *Accord*, *United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986).

12. **Circumstantial evidence.** Circumstantial evidence can be--and often is--the only form of proof of a co-conspirator's participation in a conspiracy, or of the existence of the conspiracy itself. The courts will sustain a conviction based solely on circumstantial evidence. *King v. United States*, 402 F.2d 289, 292 (10th Cir.1968). *See Glasser v. United States*, 315 U.S. 60, 80 (1942). There need not be a formal agreement or an explicit agreement; the government need only show concerted action --- a working together of two or more persons with a common design, purpose or understanding. *American Tobacco v. United States*, 328 U.S. 781, 809-810 (1945); *United States v. Fleishman*, 684 F.2d 1329, 1340 (9th Cir.1982).

13. **Mere presence**. Although "mere presence" standing by itself may not be sufficient to show membership in a conspiracy beyond a reasonable doubt, presence at

the scene of a crime or close association with others involved in a criminal offense are factors which a jury, and the Court, may consider as circumstantial proof of membership, along with other evidence. *United States v. Savaiano*, 843 F.2d 1280 (10th Cir.1988).

14. **Connecting a Person To The Conspiracy**. Once a combination of two or more persons is established, only "slight evidence" is needed to connect a particular co-conspirator to the conspiracy. *See United States v. Andrews, supra*, 585 F.2d at 964. *Accord, United States v. Duncan*, 919 F.2d 981, 991 (5th Cir. 1990)(only "slight evidence" is needed); *United States v. Moya-Gomez*, 860 F.2d 706, 758 (7th Cir. 1988); *United States v. Kennedy*, 564 F.2d 1329, 1342 (9th Cir. 1977; *United States v. Henderson*, 446 F.2d 960, 965 (8th Cir. 1971).

15. **Inferences based on actions.** As the Tenth Circuit said in *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990), "the jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the [conspiracy's] objective . . ." *Accord, United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988)("[p]articipation [in a conspiracy] may be inferred from the defendant's actions"). An alleged "minor role" is not a defense. *Id.* at 1294.

16. **A Co-Conspirator's Liability.** Once a defendant joins a conspiracy, earlier statements by his co-conspirators during the conspiracy -- even before he joined it -- are admissible against him. *See United States v. Rocha*, 916 F.2d 219, 239-40 (5th Cir. 1990); *United States v. Murphy*, 852 F.2d 1, 8 (1st Cir. 1988); *United States v. Jackson*, 757 F.2d 1486, 1490 (4th Cir. 1985); *United States v. Brown*, 755 F. Supp. 942, 946 (D. Colo. 1991), *aff'd*, 930 F.2d 35 (10th Cir. 1991).

17. **Defendant held accountable even if he did not know the co-conspirator/declarant of the 801(d)(2)(E) statement.** The government is not required to prove that a defendant knew the co-conspirator who made an 801(d)(2)(E) statement. A co-conspirator is not required to know all other members of the conspiracy scheme. *United States v. Miranda-Ortiz*, 926 F.2d 172, 175-76 (2d Cir. 1991). It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of the names, identities or locations of all of the other members. *See United States v. Escalante*, *supra*, 637 F.2d at 1200; *United States v. Green*, 523 F.2d 229, 233 (2d Cir. 1975)(single conspiracy can be established even though it took place over a long period of time, during which new members joined and old members dropped out); *United States v. Thomas*, 586 F.2d 123, 132 (9th Cir. 1978).

18. **A Co-Conspirator is held accountable even if he did not know of or participate in all means or aspects of the scheme.** The government is not required to prove that an alleged co-conspirator agreed to, knew of or participated in every aspect, means or detail of the conspiracy. *See United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *United States v. Pack*, 773 F.2d 261, 265-66 (10th Cir. 1985); *United States v. Read*, 558 F.2d 1225, 1230 (7th Cir. 1981) (defendant "need not agree to or participate in every step of the conspiracy"); *United States v. Escalante*, 637 F.2d at 1200. As the court said in *United States v. Noble*, 754 F.2d at 1329, a co-conspirator "[does not] have to participate in every facet of the conspiracy scheme." *Cf. United States v. Horton*, 847 F.2d 313, 319 (6th Cir. 1988).

19. **Responsibility for acts of co-conspirators before and after the point where he joins the conspiracy.** One who joins a conspiracy takes on the same level of

culpability as an originator of the conspiracy. *Lowther v. United States*, 455 F.2d 657, 665 (10th Cir.1972). A joiner need not know all the details of the scheme or the identities of his co-conspirators. *United States v. Sampol*, 636 F.2d 621, 676 (D.C.Cir.1980). A joiner is held to account for all of the statements and acts done by any other coconspirator at any time, at least up until the point where the joiner abandons the conspiracy. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.1974). The defendant bears the burden of showing withdrawal from a conspiracy once it has been shown that she participated in it. *See United States v. Fox*, 902 F.2d 1508 (10th Cir.1990). The defendant must show that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *United States v. Garrett*, 720 F.2d 705, 714 (D.C. Cir.1983); *See United States v. Gypsum co.* 438 U.S. 422, 464 (1978). The mere arrest of one or more co-conspirators does not terminate the conspiracy. *United States v. Thompson*, 533 F.2d 1006, 1010 (6th Cir.1976).

20. **_Pinkerton_ liability.** In a conspiracy, each member is criminally liable for all the reasonably foreseeable crimes committed during the course of and in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640 (1940). *See United States v. Galiffa*, 734 F.2d 306, 315 n.11 (7th Cir.1984)(Defendant complained unsuccessfully about being found guilty under *Pinkerton* and complicity theories of possession of marijuana with intent to distribute where evidence showed presence of defendant in vehicle used to transport marijuana, personal acquaintance with other members of the drug distribution ring, the presence of money found after arrest of the parties, the presence of large quantities of marijuana, and that the vehicle was rented in his name although he was

merely a passenger at the time of arrest;  Court held the evidence was "more than sufficient").

21. **Determining whether a statement is in furtherance of a conspiracy.** Prior to a statement being admitted under the co-conspirator exception to the hearsay rule, there must be some evidence showing that the statement was made "in furtherance" of the conspiracy.  In determining what might constitute a statement "in furtherance" of the conspiracy, the courts have consistently held that the statement need not actually advance the conspiracy but need only promote its objectives.  *United States v. Clark*, 18 F.3d 1337 (6th Cir. 1994).   The court must examine the nature of the statement and the circumstances under which the statement was made.  *United States v. Mayberry*, 896 F.2d 1117 (8th Cir. 1990); *United States v. Lewis*, 759 F.2d 1316 (8th Cir. 1985). In *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993)(*citing United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991)) the Tenth Circuit Court of Appeals indicated:

> When inquiring whether a statement was made in furtherance of a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy but on the declarant's intent in making the statement.  No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy.  To the contrary, this determination must be made by examining the context in which the challenged statement was made.

*Perez* at 1578.

22. **A statement does not need to be between co-conspirators to be in furtherance of the conspiracy.** The proffered statement <u>may but need not be</u> one made by one conspirator to another. In *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995), the Tenth Circuit stated that the issue is whether the statements were made <u>by</u> a

member of the conspiracy and not whether the statement was made <u>to</u> a member of the conspiracy.  For example, a statement made by a co-conspirator to a government agent where the motive for making this statement was to further the conspiracy is admissible under Rule 801(d)(2)(E).  *United States v. Williamson*, 53 F.3d at 1519 (10th Cir. 1995); *United States v. McCarthy*, 961 F.2d 972 (1st Cir. 1993); *United States v. Harris*, 944 F.2d 787 (10th Cir. 1991); *United States v. Cox*, 923 F.2d 519 (7th Cir. 1991); *United States v. Lujan*, 936 F.2d 406 (9th Cir. 1991); *United States v. Formanczyk*, 949 F.2d 526 (1st Cir. 1989); *United States v. Lechuga*, 888 F.2d 1472 (5th Cir. 1989); *United States v. Masse*, 816 F.2d 805 (1st Cir. 1987); *United States v. Matlock*, 773 F.2d 227 (8th Cir. 1985).

23.     **A variety of statements may be in furtherance of a conspiracy.**  In determining whether a statement is in furtherance of a conspiracy, a statement may be admissible even if subject to alternative interpretation if a reasonable interpretation of the statement would be consistent with an intent to promote the conspiratorial objectives. *United States v. Marin*, 7 F.3d 679 (7th Cir. 1993); *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988).  A statement clearly may be admissible when made in response to questions.   *United States v. Rastelli*, 870 F.2d 822 (2nd Cir. 1989); *United States v. Rahme*, 813 F.2d 31 (2nd Cir. 1987).

24.     **A co-conspirator statement may be admissible where it is characterized as "puffing."**  *United States v. Krevsky*, 741 F.2d 1090 (8th Cir. 1984). "Puffing" or "boasting" claims may be admissible, if such "puffing" or "boasting" is used to facilitate the objectives of the conspiracy. *United States v. Johnson*, 880 F.2d 413 (5th Cir. 1989); *United States v. Santiago*, 837 F.2d 1545 (11th Cir. 1988),.

25. **Declarant not charged - defendant not present**. A co-conspirator statement is admissible even in situations where the declarant is uncharged, *see United States v. Davis*, 766 F.2d 1452 (10th Cir. 1985); *United States v. Manaman*, 606 F.2d 919 (1979), and need not have been made in the presence of the defendant against whom it is being offered. *United States v. Cotton*, 646 F.2d 430 (10th Cir. 1981).

26. **Examples:** The following is an illustrative but by no means exhaustive list of those purposes for which appellate courts have held co-conspirators statements to be "in furtherance" of the conspiracy:

  a. Statements which in any way promote the objectives of the conspiracy. *United States v. Peveto*, 881 F.2d 844 (10th Cir.1989).

  b. Statements that facilitate drug transactions. *United States v. Christian*, 786 F.2d 203 (6th Cir. 1986).

  c. Statements which outline the general history of the drug conspiracy. *United States v. Stratton*, 779 F.2d 820 (2nd Cir. 1985).

  d. Statements that are intended to recruit potential co-conspirators or to otherwise induce the assistance of others in carrying out the objectives of the conspiracy. *United States v. Lujan*, 936 F.2d 406 (9th Cir. 1991); *United States v. Herrero*, 893 F.2d 1512 (7th Cir.); *United States v. Jerkins*, 871 F.2d 598 (6th Cir. 1989); *United States v. Echeverry*, 759 F.2d 1451 (9th Cir. 1985); *United States v. Heinemann*, 801 F.2d 86 (2nd Cir. 1986).

  e. Statements which identify a co-conspirator, the role of that co-conspirator or the source of drugs in a drug conspiracy. *United States v. Williamson*, 53 F.3d 1500 (10th Cir.1995); *United States v. Thompson*, 976 F.2d 666 (11th Cir. 1992); *United States v. Johnson*, 925 F.2d 1115 (8th Cir. 1991); *United States v. Smith*, 909 F.2d 1164 (8th Cir. 1990) ; *United States v. Magee*, 821 F.2d 234 (5th Cir. 1987); *United States v. Clark,* 18 F.3d 1337 (6th Cir. 1994); *United States v. Cox*, 923 F.2d 519 (7th Cir. 1991); *Peveto*, 881 F.2d 844; *United States v. Meeks*, 857 F.2d 1201 (8th Cir. 1988); *United States v. Mayberry*, 896 F.2d 1117 (8th Cir. 1990); *United States v. Rahme*, 813 F.2d 31 (2nd Cir. 1987); *United States v. Gomez*, 810 F.2d 947 (10th Cir. 1987); *United States v. Herrero*, 893 F.2d 1512 (7th Cir. 1990).

  f. Statements to explain important events in the conspiracy. *United States v. Massa*, 740 F.2d 629 (8th Cir. 1984).

    g.    Statements designed to give directions to facilitate the objectives of the conspiracy. *United States v. Schwanke*, 598 F.2d 574 (10th Cir. 1979)(proof of the existence of a joint venture determines admissibility of co-conspirator's declaration).

    h.    Statements designed to advise co-conspirators of the progress of the conspiracy and keep them abreast of conspiratorial activities. *United States v. Smith*, 833 F.2d 213 (10th Cir. 1987); *United States v. Gibbs*, 739 F.2d 838 (3rd Cir. 1984); *United States v. Heinemann, supra.*

    I.    Statements intended to assure the listener of a conspirator's ability to consummate a particular transaction. *United States v. Echeverry*, 759 F.2d 541 (9th Cir. 1985).

    j.    Statements intended to control damage to the conspiracy. *United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989).

    k.    Statements which prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy. *United States v. Rahme*, 813 F.2d 31 (2nd Cir. 1987).

    l.    Statements to conceal the objective of the conspiracy. *Doerr*, 886 F.2d 944.

    m.    Statements intended to enhance a co-conspirator's usefulness to the conspiracy. *United States v. Tarantino*, 846 F.2d 1384(D.C. Cir.1988).

    n.    Statements designed to gain the trust of co-conspirators or potential co-conspirators, to reassure trustworthiness, or to allay suspicions or fears. *United States v. Williamson*, 53 F.3d 1500 (10th Cir.1995); *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984); *United States v. Posner*, 764 F.2d 1535 (11th Cir. 1985); *United States v. Mealy*, 851 F.2d 890 (7th Cir. 1988); *United States v. Gomez*, 810 F.2d 947 (10th Cir. 1987).

    o.    Statements to new or prospective members of a conspiracy which explain the conspiracy. *United States v. Monroe*, 866 F.2d 1357 (11th Cir. 1989); *United States v. Turner*, 871 F.2d 1574 (11th Cir.1989).

    p.    Statements which set in motion acts which are an integral part of the conspiracy. *United States v. Paris*, 827 F.2d 395 (9th Cir. 1987).

    q.    Statements which reveal the existence of a conspiracy. *United States v. Mayberry*, 896 F.2d 1117 (8th Cir. 1990); *United States v. Garcia*, 994 F.2d 1499 (10th Cir. 1993); *United States v. Caliendo*, 910 F.2d 429 (7th Cir. 1990).

r. Statements in a drug conspiracy which detail such things as price, method of payment, delivery amounts, or the like. *United States v. Robinson*, 956 F.2d 1388 (7th Cir.1992); *United States v. Cox*, 923 F.2d 519 (7th Cir. 1991).

s. Statements which indicate payments made or demands for payment to accomplish activities of the conspiracy. *United States v. Esacove*, 943 F.2d 3 (5th Cir. 1991).

t. Statements concerning the collection of drug debts. This could include threats to kill any person owing money in a drug conspiracy. *United States v. Meeks*, 857 F.2d 1201 (8th Cir. 1988).

u. Statements to co-conspirators or potential co-conspirators indicating potential investigation, apprehension or punishment. These statements could include concerns about informants, threats or physical action taken against persons who would cooperate with law enforcement authorities. *United States v. Triplett*, 922 F.2d 1174 (5th Cir.1991).

27. **The order of proof.** The Federal Rules of Evidence (FRE) provide the determination of the admissibility of out-of-court declarations pursuant to FRE 801(d)(2)(e), 803, or 804(b)(3) is a question for the trial court to decide. *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir.1980). *See United States v. Lippner*, 676 F.2d 456, 463-464 (11th Cir.1982). *See also Bourjaily, supra*. The admissibility of co-conspirator hearsay is governed by FRE 104(a):

> Preliminary questions concerning the . . . admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination, [the court] is not bound by the rules of evidence except those with respect to privileges.

28. **The FRE provide latitude in establishing the foundation for admission**. Rule 1101(d)(1) provides that the rules of evidence "do not apply" to "[t]he determination of questions of fact preliminary to admissibility of evidence . . ." Accordingly, the Government, in "proving up" co-conspirator statements, and the Court, in making its admissibility determinations, are not bound by the rules of evidence, except concerning

16

privileges.  The "preferred order" of proof for the admission of out-of-court statements through application of Rule 801(d)(2)(E) permits "connecting up" strategies, proffers, pretrial hearings or any reasonable combination of approaches.

Respectfully submitted this 4th day of June 2012.

        JOHN F. WALSH
        UNITED STATES ATTORNEY

By:  s/*Guy Till*
      GUY TILL
      Assistant United States Attorney
      U.S. Attorney's Office
      1225 17th Street, Suite 700
      Denver, CO. 80202
      Telephone:  (303) 454-0200
      Fax:  (303) 454-0409
      E-Mail:  guy.till@usdoj.gov
      Attorney for Government

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June, 2011, I electronically filed the foregoing **GOVERNMENT'S INTRODUCTION TO *JAMES* PROFFER (#317)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/Michelle Trujillo*
MICHELLE TRUJILLO
Legal Assistant
U.S. Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
(303) 454-0100
(303) 454-0409 Fax
Michelle.Trujillo@usdoj.gov